UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CYRIL MARSHALL,

                Petitioner,

          V.

DALE ARTUS,

                Respondent.
_____

**REPORT AND
RECOMMENDATION**

04-CV-881

## I. INTRODUCTION

Petitioner Cyril Marshall, acting *pro se*, commenced this action seeking habeas corpus relief under 28 U.S.C. § 2254.  Petitioner is an inmate at the Clinton Correctional Facility.  In 2002, he was convicted in a New York State court of Burglary in the First Degree, Assault in the Second Degree and Endangering the Welfare of a Child and was sentenced to a term of imprisonment.  Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), for a report and recommendation. (Docket No. 24).

## II. BACKGROUND

**A.**    **Facts**

The following factual summary is derived from the state court records.   On September 4, 2001, Petitioner traveled to 125 Second Street in the City of Albany, New

York, which was the residence of Ceslie Hughes.  (T at 54).[1]  Petitioner was the father of one of Ms. Hughes' children. (T at 57- 58).

In the early morning of September 4th, Petitioner knocked at Ms. Hughes' door and asked to come in.  (T at 64).  According to Ms. Hughes' testimony, she asked what Petitioner needed and he stated that he wanted to shower and collect certain clothes that were inside her home.[2]  (T at 64-65).  Ms. Hughes refused to let Petitioner come in and stated that she would go and get his clothes for him.  (T at 65).  Ms. Hughes gathered Petitioner's clothes and put them out a back window.   When she looked up, Petitioner was standing by the back window within two feet of her.  (T at 65-66).

According to the testimony at trial, Ms. Hughes ran upstairs to get away from Petitioner and he followed her into the house and assaulted her in the presence of her children.  (T at 66).  Petitioner hit Ms. Hughes with his fists and a glass mug that he picked up from her dresser. (T at 66-68).  Petitioner then left the home. (T at 68-69).  Ms. Hughes' son called 911 during the incident and when the police arrived they found Hughes bleeding profusely.  (T at 91-92, 102-03, 108).   Ms Hughes suffered head and facial wounds requiring stitches and a broken hand, which required a metal plate due to a crushed bone. As result of her injuries, the victim missed two months of work.  (T at 69-72, 131-134).

The police were unable to find Petitioner until December of 2001, after Ms. Hughes received a package from Petitioner with a return address located in Washington, D.C.  (T

---

[1]References preceded by "T" are to the transcript pages of Petitioner's trial.

[2]Ms. Hughes explained in her testimony that Petitioner is the father of her daughter Cyrena, but that they were never married.  (T at 57).  She testified that they had not lived together since 2000, but that they maintained contact.  (T at 58).  In August of 2001, Petitioner babysat for Ms. Hughes' son daily for several weeks.  (T at 60).  During this period, Petitioner left his clothes in Ms. Hughes' house. (T at 61-62).

at 74).   Petitioner was then apprehended in Washington, D.C.  After waiving extradition, and while he was being transported to Albany, Petitioner asked what he was being charged with.  (SH[3] at 13, T at 119).  Detective Sean Keane informed Petitioner that he was charged with assaulting Ms. Hughes.   Petitioner denied assaulting Ms. Hughes and claimed a window fell on top of her while she was throwing his clothes out of it.  (T at 119-23).

On February 19, 2002, an Albany County Grand Jury returned Indictment Number 15-7347, which charged Petitioner with one count of Burglary in the First Degree, in violation of New York Penal Law ("NYPL") §140.30(2);[4] two counts of Assault in the Second Degree, in violation of NYPL § 120.05(1) and § 120.05(2); and two counts of Endangering the Welfare of a Child, in violation of NYPL § 260.10(1).

**B.     State Trial Court Proceedings**

The Honorable Thomas A. Breslin, Albany County Court Judge, presided over Petitioner's *Huntley*[5] hearing on May 6, 2002.  Petitioner was represented by Frederick Korkosz, Esq. of Albany, New York.  Petitioner challenged the admissibility of the statement he made to police while being transported from Washington, D.C. to Albany.  Judge Breslin stated that he gave full "credence to the testimony as offered candidly and forthrightly by

---

[3]References preceded by "SH" are to the transcript pages of Petitioner's suppression hearing.

[4]Unless otherwise indicated, all references to the NYPL are to McKinney 1998.

[5] A hearing dedicated to determining  the voluntariness of a criminal defendant's statements to the police is referred to as a *Huntley* hearing pursuant to  People v. Huntley, 255 N.Y.S.2d 838 (1965).  There was also a *Mapp* portion of the hearing with respect to the glass mug used to hit Ms. Hughes in the face. A hearing to determine the admissibility of the physical evidence is referred to as a *Mapp* hearing pursuant to Mapp v. Ohio, 367 U.S. 643 (1961).  However, the challenge to the admission of the glass mug was withdrawn.  (SH at 6).

Detective Keane." (SH at 21).   Judge Breslin found that although Petitioner's statement was custodial, it was a "spontaneous declaration" and he had initiated the discussion by asking what he was being charged with. (SH at 22-23).  Judge Breslin found that there was nothing preventing Detective Keane from responding to that question and the fact that Petitioner offered an explanation to the charges does not make the "interaction interrogational in any way, shape or form." (SH at 23).  Accordingly, Judge Breslin found that the statement was voluntarily made and denied suppression.  (Id.).

The Honorable Joseph C. Teresi, Albany County Court Judge, presided over Petitioner's jury trial.  The trial began on June 17, 2002.   Petitioner continued to be represented at trial by Frederick Korkosz, Esq.  On June 18, 2002, the jury found Petitioner guilty of all charges; Burglary in the First Degree, two counts of Assault in the Second Degree, and two counts of Endangering the Welfare of a Child.  (T at 267-271).

On August 6, 2002, Petitioner was sentenced to a twenty-five (25) year determinate term with five years post-release supervision for his conviction of Burglary in the First Degree;  for each of his two convictions for Assault in the Second Degree, Petitioner was sentenced to a seven year determinate term with three years post-release supervision; and for each of his two convictions for Endangering the Welfare of a Child, Petitioner received a one year determinate sentence.  All of Petitioner's sentences were to run concurrent to each other.  (S at 11-12).[6]  Therefore, Petitioner's total aggregate sentence was 25 years.

## C.    State Appellate Proceedings

---

[6]References preceded by "S" are to the transcript pages of Petitioner's sentencing proceedings.

4

Petitioner, represented by William T. Morrison, Esq., appealed his conviction to the Appellate Division, Third Department, of the New York State Supreme Court.  Petitioner asserted three arguments in support of his appeal: (1) that his statement to the police should have been suppressed because he was not given his *Miranda*[7] warnings, (2) that the prosecutor had committed misconduct by insinuating that Petitioner had failed to pay child support, by identifying Petitioner by his orange jumpsuit, by highlighting his custodial status, and by giving her personal opinion that Ms. Hughes had given multiple consistent accounts of the incident, and (3) that his trial counsel failed to provide him with "meaningful representation" where he was indifferent to the fact that Petitioner was wearing his prison orange jumpsuit and failed to object to the prosecutor's misconduct.

On December 1, 2003, prior to the final determination of his appeal to the Third Department, Petitioner, through Attorney Morrison, moved pursuant to Criminal Procedure Law § 440 to set aside the verdict.  Petitioner again argued that he had been denied effective assistance of counsel because his attorney failed to advise him of his right to stand trial in civilian clothing, and for his attorney's failure to object to the prosecutor having him identified by his prison attire.   (See Exhibit E).[8]

The Appellate Division issued its decision on December 24, 2003, affirming Petitioner's conviction.   People v. Marshall,768 N.Y.S.2d 703 (3rd Dept 2003).   The Appellate Division found that (1) his statement was made voluntarily and spontaneously and was not the "result of provocation, encouragement or inducement," (2) he was

---

[7]Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[8]References to "Exhibits A- I" are to the state court records provided by Respondent in this case.

represented effectively by counsel, and (3) his claims of prosecutorial misconduct were not preserved by timely objection for appellate review and in any event, were meritless. Id. at 704-05. Petitioner's application for leave to appeal to the Court of Appeals was denied on March 15, 2004. People v. Marshall, 2 N.Y.3d 743 (2004).

After the Appellate Division affirmed Petitioner's conviction, the District Attorney's office submitted an opposition to Petitioner's 440 motion, arguing that the Appellate Division already rejected the ineffective assistance of counsel claims in its decision. (See Exhibit F). Judge Teresi agreed and denied Petitioner's 440 motion pursuant to C.P.L. § 440.10(2)(a), stating that "the Appellate Division clearly addressed all grounds and issues now raised by" Petitioner. (See Exhibit G).

## D.  Federal Habeas Corpus Proceedings

Petitioner, proceeding *pro se*, commenced this action on July 26, 2004 , by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1). Petitioner asserts the same three grounds for habeas relief as he did before the Appellate Division: (1) that his statement to police should have been suppressed; (2) that the prosecutor's misconduct deprived Petitioner of a fair trial; and (3) that he was denied effective assistance of counsel.[9] (See Docket No. 1). Respondent argues that the Appellate Division's determination with respect to Petitioner's three claims was not contrary to or an unreasonable application of Supreme Court precedent. (See Docket No. 13).

_____

[9]Although Petitioner lists four grounds for habeas relief in his petition, his first ground and fourth ground are both alleging ineffective assistance of counsel at the trial court level and will therefore be discussed together under the heading of "ineffective assistance of counsel." See (Docket No. 1 at 7-10, 43-50).

6

For the reasons that follow, the Court recommends that the Petition be DENIED.

## III. DISCUSSION

### A.    Federal Habeas Corpus Standard

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim."  Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002).  A presumption of correctness applies to findings by both state trial and appellate courts.  Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law.  A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts."  Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case."  Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence."  Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)

8

(internal quotation marks omitted).

**B.    Petitioner's Claims**

As set forth above, Petitioner asserts the following three grounds for habeas relief: (1) that his statement to police should have been suppressed as taken in violation of his *Miranda* rights; (2) that the prosecutor's misconduct deprived him of a fair trial; and (3) that he was denied effective assistance of counsel.[10]  (See Docket No. 1).

**1.    *Miranda* Claim**

In Petitioner's first ground for habeas relief, he argues that his statement to the police while being transported from Washington, D.C. to Albany should be suppressed because it was the result of an unlawful, custodial interrogation.  Petitioner asked Detective Sean Keane what he was being charged with.  Detective Keane responded to that question by informing Petitioner that he was being charged with burglary and for hitting Ms. Hughes. (T at 119).  Petitioner then stated to Detective Keane "I didn't hit her.  The window fell on top of her when she was throwing my clothes out the window." (T at 119-120).  It is undisputed that Petitioner was in custody at the time of this statement, but had not yet received or waived his *Miranda* rights.  (SH at 14-15, 21)[11]

The Supreme Court has held that interrogation includes, "express questioning or its

---

[10]As also set forth above, Petitioner list four grounds for habeas relief in his petition, however, his first and fourth grounds allege claims of ineffective assistance of trial counsel and will therefore be discussed together.

[11]Detective Sean Keane explained at the Suppression Hearing that he did not read Petitioner his *Miranda* rights because he did not intend to question him.  Detective Keane further explained that when there is an arrest warrant in place, he is precluded from questioning the party without their attorney present.

functional equivalent . . . words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980); see also, Pennsylvania v. Muniz, 496 U.S. 582, 601 (1990)(stating the same); Rosa v. McCray, 396 F.3d 210, 220 (2d Cir. 2005). However, "[a]ny statement given freely and voluntarily" is admissible, and "[v]olunteered statements of any kind are . . . not affected by our holding today." Miranda v. Arizona, 384 U.S. 486, 478 (1966).

Where the suspect's statements are volunteered and not made in response to express questioning or its functional equivalent, the *Miranda* protections are not implicated. See Innis,, 446 U.S. at 299-302; Miranda, 384 U.S. at 478; cf. United States v. Colon, 835 F.2d 27, 30 (2d Cir.1987) (stating that once a suspect invokes *Miranda* right to remain silent, any statements to police must be spontaneous and not the result of interrogation in order to be admissible) (citation omitted); Wolfrath v. LaVallee, 576 F.2d 965, 973 n. 6 (2d Cir.1978) ("[S]ince the statement which was litigated below was a gratuitously volunteered statement, *Miranda* itself is inapplicable, for spontaneous statements which are not the result of 'official interrogation' have never been subject to its strictures.") (citations omitted).

In the present case, the state court determined, based upon the testimony at the suppression hearing, that Petitioner had volunteered the statements in question. This Court is required to give deference to the state court's factual determinations, and Petitioner bears the burden of rebutting those determinations by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet that burden. The testimony at the suppression hearing established that Petitioner initiated the conversation with Detective Keane, that the detective simply answered Petitioner's question regarding

10

the charges, and that Petitioner then volunteered the claim regarding Ms. Hughes' injuries. (T at 123; SH at 22).

Given this evidence, the state court's determination that Petitioner's statements were voluntary and therefore did not implicate *Miranda* was neither contrary to, nor an unreasonable application of clearly established federal law. Moreover, the decision was likewise not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. See Arkin v. Bennett, 282 F. Supp.2d 24, 34 (S.D.N.Y. 2003) (denying habeas relief and finding that *Miranda* was not implicated because trial court reasonably determined that the petitioner had initiated conversation with police officer and statement was spontaneous); Vasquez v. Filion, 210 F. Supp. 2d 194, 200 (E.D.N.Y. 2002) (denying habeas relief and holding that petitioner's *Miranda* rights were not violated because there was "no evidence that Officer Doyle should have known that informing petitioner of the charge against him was reasonably likely to elicit an incriminating response from the suspect").

Accordingly, Petitioner's *Miranda* claim should be DISMISSED.


### 2.     Prosecutorial Misconduct

Petitioner's second ground for habeas relief is based on a theory of prosecutorial misconduct. Petitioner argues that (a) the prosecutor's reference to his prison jumpsuit during the trial was improper, (b) the prosecutor's insinuation that he failed to make child support payments was improper, and (c) the prosecutor improperly vouched for the credibility of Ms. Hughes in summation.

### a)     Procedural Default

11

The Appellate Division stated that these alleged instances of prosecutorial misconduct were "not preserved by timely objection."   Marshall, 768 N.Y.S.2d at 704. Ordinarily, the failure to preserve a claim for appellate review constitutes procedural default and bars federal habeas corpus review.  See Manzella v. Senkowski, No. 97-CV-921, 2004 WL 1498195, at *28 (W.D.N.Y. July 2, 2004); Cabassa v. Filion, No. 03 CIV. 2920, 2004 WL 1367503, at *5 (S.D.N.Y. June 16, 2004).

Where the highest state court that rendered a judgment in the case "clearly and expressly states that its judgment rests on a state procedural bar," such procedural default constitutes independent and adequate state grounds to deny habeas relief. Harris v. Reed, 489 U.S. 255, 263 (1989) (internal quotations and citations omitted); see also Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir.1996); Levine v. Commissioner of Corr. Servs., 44 F.3d 121, 126 (2d Cir.1995).  In such cases, a federal court is generally barred from reviewing a petitioner's claims.

The appeals court's language indicates that its decision with respect to Petitioner's prosecutorial misconduct claim was based upon the fact that the claim had not been preserved for appellate review.  Accordingly, this Court finds that it is barred from reviewing Petitioner's prosecutorial misconduct claims because the Appellate Division's rejection of these claims was clearly based upon the procedural default.  Harris, 489 U.S. at 262; see also, Glenn, 98 F.3d at 724; Glenn v. Bartlett, 98 F.3d 721, 724-725 (2d Cir. 1996), cert. denied, 520 U.S. 1108 (1997)(holding that where claim is not preserved, a habeas court may not review the issue, even if the state appellate court also ruled on the merits).

**b)**      **Merits of Petitioner's Claims of Prosecutorial Misconduct**

Moreover, even if Petitioner's claims of prosecutorial misconduct were not

procedurally barred, they would not entitle Petitioner to habeas relief.

The habeas court's scope of review as to claims of prosecutorial misconduct is quite limited.   In order to overturn a conviction, the Court must find that the prosecutor's comments constituted more than mere trial error and instead were so egregious as to violate the petitioner's due process rights. See Donnelly v. DeChristoforo, 416 U.S. 637, 647-48 (1974); Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir.1990) ("The appropriate standard of review for a claim of prosecutorial misconduct on a writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power.") (internal quotation marks and citations omitted); accord Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir.1998).

The Supreme Court accordingly has instructed federal habeas courts reviewing claims of prosecutorial misconduct brought by state petitioners to distinguish between "ordinary trial error of a prosecutor and that sort of egregious misconduct ... amount [ing] to a denial of constitutional due process." Donnelly, 416 U.S. at 647-48 (citations omitted); accord Floyd, 907 F.2d at 353. Donnelly's standard requires the federal habeas court to ask whether " 'the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair.' " Floyd, 907 F.2d at 353 (quoting Garofolo v. Coomb, 804 F.2d 201, 206 (2d Cir.1986)) (citing Donnelly, 416 U.S. at 645 and, inter alia, United States v. Modica, 663 F.2d 1173 (2d Cir.1981), cert. denied, 456 U.S. 989 (1982)); see also Garofolo, 804 F.2d at 206 (noting that harmless error doctrine may be applicable to prosecutorial misconduct involving statements to the jury) (citing United States v. Hasting, 461 U.S. 499, 510-12 (1983)).        Given the narrow scope of habeas review of prosecutorial misconduct claims, a habeas petitioner must show "that he suffered actual prejudice

13

because the prosecutor's comments had a substantial and injurious effect or influence in determining the jury's verdict." <u>Tankleff v. Senkowski</u>, 135 F.3d 235, 252 (2d Cir.1998) (quoting <u>Bentley v. Scully</u>, 41 F.3d 818, 823 (2d Cir.1994) (internal quotation marks and citation omitted in original)).   In making the determination of whether a defendant has suffered "actual prejudice" as a result of the prosecutorial misconduct, the Second Circuit has examined " 'the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements.' " <u>Tankleff</u>, 135 F.3d at 252 (quoting <u>Floyd</u>, 907 F.2d at 355 (quoting <u>United States v. Modica</u>, 663 F.2d at 1181) (internal quotation marks omitted); citing <u>United States v. Parker</u>, 903 F.2d 91, 98 (2d Cir.1990)).

### i.    Reference to Petitioner's Prison Jumpsuit

Petitioner's jumpsuit was mentioned four times during the course of the trial in the context of witnesses identifying him in the courtroom.  <u>See</u> (T at 56, 179, 182, 184); <u>see also</u>; (Docket No. 1 at 32).   Ms. Hughes identified him in her direct examination and three police officers identified Petitioner by his orange jumpsuit in the prosecution's rebuttal case. (<u>Id</u>.).  Petitioner asserts that these references to his jumpsuit "branded [him] a criminal," and made the jury think that he was a "security risk".  (Docket No. 1 at 32**,** 47).

However, as set forth above, to be entitled to relief, Petitioner must show that he "'suffered actual prejudice because the prosecutor's comments during [trial] had a substantial and injurious effect or influence in determining the jury's verdict.' " <u>Tankleff</u>, 135 F.3d at 252 (quoting <u>Bentley v. Scully</u>, 41 F.3d 818, 823 (2d Cir.1994) (internal quotation marks and citation omitted in original)).  Petitioner cannot establish any such prejudice in

14

this case.  As Respondent correctly notes, the jurors were well aware that Petitioner was a security risk.  The evidence at trial established that he had fled Albany within one week of the crime and was later found in Washington, D.C.  (T at 152, 156).  Additionally, Petitioner himself admitted in his testimony that he fled Albany.  (T at 151, 156).  The jurors were also aware of Petitioner's prior criminal record, as he conceded during cross-examination that he had prior convictions for various crimes, including assault and resisting arrest.  (T at 165-172).  Therefore, in light of the other evidence at trial, this Court finds that the references to Petitioner by his orange jumpsuit did not cause Petitioner to suffer any actual prejudice that would have had an injurious effect or influence on the jury's verdict.  Accordingly, this aspect of Petitioner's prosecutorial misconduct claim should be DENIED.

### ii.    Child Support Payments

Petitioner claims next that the prosecutor's questions to him regarding his child support payments were improper in that they insinuated that he owed or was delinquent in his child support payments.  See (Docket No. 1 at 24).  During her cross-examination of Petitioner, the prosecutor asked him about any child support he was paying to Ms. Hughes for his daughter, the following are the questions that the prosecutor asked:

> Q:    You're a good father to your kids, right?
> A:    I am.

(T at 157).

> Q:    Up on your child support?  You pay child support?
> A:    Yes, I do pay child support, but child support was a lot of things - -
> Q:    I'm just asking, do you pay child support?
> A:    Yes, ma'am, I do.
> Q:    Okay.  As a matter of fact, you had a Family Court proceeding that day on September 4th regarding child support, correct?
> A:    Exactly a day after or something, right.
> Q:    That leads me to this question, Mr. Marshall.  Why were you paying

15

child support for Cyrena Marshall if you were living there? (T at 157).

| | | |
|---|---|---|
| Q: | So you're telling this Court that you consistently pay child support to a daughter that you live with? |
| A: | I never had a chance to start paying child support for my daughter. She take me to Court two weeks before this has happened or a month before this had happened in September. |
| Q: | Well, you've had a history in Family Court with her, haven't you, regarding child support? |

(T at 158).

Respondent notes that the "issue of child support was not mentioned once during the People's case." See (Docket No. 13 at 23). Rather, Respondent states that the issue only arose during the cross-examination of Petitioner as set forth above. (T at 157-58). This Court notes that after the prosecutor asked the questions above, she then moved on to other areas of her cross-examination. See (T at 158-178).

"[W]hen a defendant takes the stand, 'his credibility may be impeached and his testimony assailed like that of any other witness.'" Portuondo v. Agard, 529 U.S. 61, 69 (2000)(quoting Brown v. United States, 356 U.S. 148, 154(1958); see also Dickens v. Herbert, No. 00 CIV. 3249, 2002 WL 1728514, at *7-*8 (S.D.N.Y. July 25, 2002)(where the petitioner testified as to his personal life and presented his version of events, cross-examination on those issues was proper).

In the present case, Petitioner asserted in his direct and cross-examination that he was a devoted father who lived with Ms. Hughes and his daughter in her home at 125 Second Street. (T at 139-41, 156). As such, cross-examination regarding this claim was relevant and proper.

16

Because Petitioner has not shown that the Appellate Division's decision with respect to this claim was contrary to or  an unreasonable application of Supreme Court precedent, this aspect of his prosecutorial misconduct claim should be DENIED.

### iii.    Ms. Hughes' Credibility

The last aspect of Petitioner's prosecutorial misconduct claim is that the prosecutor vouched for Ms. Hughes' credibility and truthfulness during her summation.  The law on this point is well-settled: It is improper for a prosecutor to interject personal beliefs into a summation. United States v. Young, 470 U.S. 1, 8 (1985) (quoting ABA Standards for Criminal Justice 3-5.8(b) (2d ed.1980) (quotation marks omitted)); accord, e.g., United States v. Nersesian, 824 F.2d 1294, 1328 (2d Cir.1987). However, a reviewing court "must evaluate the challenged remarks in the context of the trial as a whole, for the government is allowed to respond to argument that impugns its integrity or the integrity of its case." United States v. Rivera, 22 F.3d 430, 438 (2d Cir.1994).

In this case, Petitioner states that the prosecutor "had no basis for bolstering the complainant's testimony by referring to prior consistent accounts in her summation. Moreover, by opining that the complainant had told consistent stories on prior occasions, she was personally vouching for Ms. Hughes' truthfulness."  See (Docket No. 1 at 39). However, Petitioner's attorney specifically questioned the consistency of Ms. Hughes' testimony in his summation.  (T at 194-95).   A review of the prosecutor's summation reveals that she merely pointed out that Ms. Hughes' testimony was consistent and credible in response to Petitioner's attorney's closing comments.  See United States v. Rivera, 22 F.3d 430, 438 (2d Cir.1994) (holding that when the defense has "attacked the prosecutor's

credibility or the credibility of the government agents, the prosecutor is entitled to reply with rebutting language suitable to the occasion.") (citations omitted); see also, United v. Young, 470 U.S. 1, 11-13 (1985) (explaining the "invited response" rule).  The prosecutor stated that "[f]our separate times Ceslie Hughes tells her story of what happened, and I didn't hear anything inconsistent about it[.]" (T at 201).  Petitioner cannot establish that he suffered any "actual prejudice" as a result of this statement because the prosecutor did not misstate the evidence.  See  Darden v. Wainwright, 477 U.S. 168, 181-182 (1986) (prosecutor's summation did not render trial fundamentally unfair where prosecutor did not manipulate or misstate the evidence, and comments were in part invited by or responsive to the summation of the defense).

Even assuming arguendo that the comment was improper, where there is no defense objection, reversal based on a prosecutorial comment is not warranted unless the misconduct may be characterized as "flagrant." U.S. v. Coriaty, 300 F.3d 244,  255 (2d Cir. 2002). The Court cannot say that this comment in summation in any way approached what could be described as flagrant. See, e.g., United States v. Rivera, 22 F.3d at 437

Moreover, even if the Court were to accept Petitioner's argument that the prosecutor's comments during trial constituted misconduct, the proof of Petitioner's guilt was overwhelming and thus, the comments were harmless.   As the Second Circuit has noted, "[o]ften, the existence of substantial prejudice turns upon the strength of the government's case: if proof of guilt is strong, then the prejudicial effect of the comments tends to be deemed insubstantial; if proof of guilt is weak, then improper statements are more likely to result in reversal." Modica, 663 F.2d at 1181, see also, Bentley, 41 F.3d 818, 824 (2d Cir. 1994)(holding that review of a habeas corpus challenge based upon

18

prosecutorial misconduct includes consideration of "whether the conviction was certain absent the prejudicial conduct."). Finally, Ms. Hughes' testimony was corroborated not only by her son's testimony and recorded 911 phone call, but also by the police officers' who investigated her claims and the medical evidence.

Accordingly, Petitioner's claim for habeas relief based upon a theory of prosecutorial misconduct should be DISMISSED as both procedurally barred and without merit.

### 3.    Ineffective Assistance of Counsel

Petitioner's last claim for habeas relief is that he received ineffective assistance of trial counsel. Specifically, Petitioner asserts that his trial counsel improperly failed to object to his appearance in prison clothing and to the prosecutor's alleged misconduct. Petitioner also asserts that the Appellate Division's decision was based upon a misinterpretation of Supreme Court law. Respondent asserts that the Appellate Division's determination of the merits of this claim was not contrary to, or an unreasonable application of, Supreme Court law.

In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a habeas petitioner must satisfy a two-part test. First, a petitioner must demonstrate that counsel's performance was so deficient that counsel was not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution. <u>Id.</u> at 688, 104 S.Ct. 2052. In other words, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." <u>Id.</u> Second, a petitioner must show that counsel's deficient performance prejudiced him. <u>Id.</u> at 694, 104

S.Ct. 2052.

The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate.  "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697, 104 S.Ct. 2052.

As set forth above, Petitioner claimed that his trial counsel, Frederick Korkosz ("Korkosz"), was ineffective for failing to object to his appearance in court in prison attire and to alleged prosecutorial misconduct.  However, the Appellate Division found that when the trial was viewed in its totality, Petitioner was provided with "meaningful representation." Marshall, 768 N.Y.S.2d at 704.  Additionally, the appeals court found that the failure of defense counsel to object to Petitioner's appearance in prison garments did "not rise to ineffective assistance."  Id. (citing Estelle v. Williams, 425 U.S. 501, 512 (1976)).  The appeals court further found that the failure to object to the alleged prosecutorial misconduct did not "impinge upon defendant's right to a fair trial."  Id.

In Estelle v. Williams, which was cited by the Appellate Division in its decision, the United States Supreme Court held that "although the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." 425 U.S. at 512-13.  In sum, under Estelle "there is no per se defect in a criminal proceeding where the defendant wears prison attire without objection." Campbell v. Greene  440 F.Supp.2d 125, 145 (N.D.N.Y. 2006).

In addition, the Supreme Court indicated that it is a reasonable defense strategy "to

produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." Estelle, 425 U.S. at 507-08; see also Campbell, 440 F. Supp. 2d at 145 n.10.

The strategic consideration identified by the Supreme Court in Estelle certainly "bear[s] upon whether a lawyer's failure to object to his client's appearance in his prison uniform falls below 'an objective standard of reasonableness' under Strickland." Walker v. Bennett, 262 F. Supp. 2d 25, 37 (W.D.N.Y. 2003). Indeed, in light of the Supreme Court's holding in Estelle, and contrary to Petitioner's claim in his petition, the Appellate Division's finding regarding counsel's failure to object to the prison garments cannot be deemed contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court.

Moreover, Petitioner cannot show that he was unfairly prejudiced by the fact that he appeared in prison garments. As noted above, the evidence of guilt was particularly strong. Petitioner has failed to show that there is any reasonable probability that the jury would have acquitted him had he not been wearing prison clothing.

Accordingly, because Petitioner has failed to show that the state courts' determination of the merits of his claim was either contrary to or an unreasonable application of clearly established Federal law, his claim for habeas relief based upon alleged ineffective assistance of counsel should be DISMISSED.


## IV. CONCLUSION

For the reasons stated above, the Court recommends Cyril Marshall's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied, and that his petition be

dismissed.  Because Petitioner has failed to make a substantial showing of a denial of a

constitutional right, I recommend that a certificate of appealability not issue. See 28 U.S.C.

§ 2253(c)(2) (1996).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge


DATED:      July 9, 2007

            Syracuse, New York


## V. ORDERS


Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report &

Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy

of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the
Clerk of this Court within ten(10) days after receipt of a copy of this Report &
Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b)
of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

July 9, 2007

Victor E. Bianchini
United States Magistrate Judge